**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| CITY OF SHULLSBURG and EMCASCO INSURANCE COMPANY a/s/o City of Shullsburg | |
| **Plaintiff,** | Case No. _____ |
| v. | |
| GREE USA, INC. 20035 E. Walnut Drive North City of Industry, CA 91789 | |
| GREE ELECTRIC APPLIANCES INC. OF ZHUHAI West Jinjixi Road Xhuhai, China | **COMPLAINT** |
| HONG KONG GREE ELECTRIC APPLIANCE SALES, LTD. Unit 2612 Miramar Tower 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong SAR | |
| MJC AMERICA LTD d/b/a Soleus International, Inc. 20035 E. Walnut Drive North City of Industry, CA 91789 | |
| MJC AMERICA HOLDINGS CO., INC. 20035 E. Walnut Dr. N. City of Industry, CA 91789 | |
| JOHN DOES 1 – 10 Address unknown | |
| ABC INSURANCE COMPANIES Address unknown | |
| **Defendants.** | |

Plaintiffs, City of Shullsburg and, separately, EMCASCO Insurance Company a/s/o City

of Shullsburg, by their attorneys, and for their Complaint against Defendants states as follows:

**PARTIES**

1.      Plaintiff, City of Shullsburg, is a Wisconsin municipality, with its principal place of business and city hall located at 190 N. Judgment Street, Shullsburg, WI 53586-9573.

2.      At all times relevant, City of Shullsburg owned the Badger Mine and Museum located at 279 W Estey St., Shullsburg, WI, 53586, at which the fire made the basis of this lawsuit occurred.

3.      Plaintiff, EMCASCO Insurance Company ("EMC"), is an insurance company formed and existing under the laws of the State of Iowa and authorized to conduct business in Wisconsin, with its principal place of business located at 717 Mulberry Street in Des Moines, Iowa. EMC issued a  policy of insurance to the City of Shullsburg, policy number 5R4-17-96 (the "Policy"), insuring certain property owned by City of Shullsburg, including the property  located at 279 W Estey St., Shullsburg, WI, 53586 (the "Badger Mine and Museum"), which was in effect at the time of the fire made the basis of this lawsuit, and subject to its terms and conditions.

4.      GREE U.S.A., INC. is a corporation incorporated in the State of California, with its principal place of business located at 20035 E. Walnut Drive North, City of Industry, CA 91789, and is therefore a citizen of the State of California.

5.      GREE ELECTRIC APPLIANCES INC. OF ZHUHAI ("Gree China") is a Chinese business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at West Jinjixi Road, Zhuhai, China and is a citizen of the People's Republic of China. Gree Zhuhai designs, manufactures, sells and distributes dehumidifiers, including the dehumidifier at issue in this lawsuit.

6.      HONG KONG GREE ELECTRIC APPLIANCE SALES, LTD. ("Gree Hong Kong") is a Hong Kong, China business entity that most resembles the U.S. business form of a corporation, with its principal place of business located at Unit 2612 Miramar Tower, 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong, S.A.R. Gree Hong Kong is a citizen of the People's Republic of China. Gree Hong Kong at all times material hereto was in the business of selling and/or distributing electronic appliance products, including the product at issue in this lawsuit.

7.      MJC AMERICA, LTD. D/B/A SOLEUS INTERNATIONAL INC. ("MJC America") was and still is, under information and belief, a domestic corporation duly organized and existing under the laws of the State of California with its principal place of business located at 20035 E. Walnut Drive North, City of Industry, California 91789.

8.      MJC AMERICA HOLDINGS CO., INC. ("MJC Holdings") is and was at all times mentioned herein a privately held corporation incorporated under the laws of the State of California, having its principal place of business located at 20035 E. Walnut Dr. N., City of Industry, CA 91789.  Hereinafter, both Defendants MJC America, Ltd. d/b/a Soleus International Inc. and MJC America Holdings Co., Inc. are referred to collectively as "MJC" herein.

9.      Upon information and belief, at all relevant times herein, MJC was a minority owner of Gree USA.

10.      Service of process upon Gree China and Gree Hong Kong can be accomplished in the United States and without implicating the Hague Convention, as demonstrated in at least the following cases in which Gree China and/or Gree Hong Kong were served in the United States, filed motions to dismiss for improper service, and the motions were denied, service being deemed proper. S*tate Farm Fire & Cas. Co. v. Gree USA, Inc.*, No. 3:18-CV-349 RLM-MGG, 2019 WL 4674611 (N.D. Ind. Sept. 25, 2019); *Erie Ins. Exch. v. Gree USA, Inc.*, No. 3:CV-

18-2126, 2019 WL 1405854 (M.D. Pa. Mar. 28, 2019); *Nationwide Mut. Ins. Co. v. Gree USA, Inc.*, No. CV 18-1105, 2019 WL 1244093 (W.D. Pa. Mar. 1, 2019), *report and recommendation adopted*, No. CV 18-1105, 2019 WL 1243280 (W.D. Pa. Mar. 18, 2019); *Nationwide Prop. & Cas. Ins. Co. v. Gree USA, Inc.*, No. 2:18-CV-00881, 2018 WL 6419955, (S.D. Ohio Dec. 6, 2018); *Nationwide General Insurance Company v. Gree USA, Inc., et al.*, 3:18-cv-12607 (E.D. Mich. Nov. 7, 2018). The Hague Convention is not implicated when service of process is made in the United States and not abroad.

11.    Gree USA, Inc. was at all times relevant hereto, and is currently, the alter ego of Gree China and Gree Hong Kong. At all times relevant hereto Gree China exerted such control over Gree USA, Inc. and over Gree Hong Kong, as to cause the companies to lose their separate identities, including Gree China having control over Gree USA's day-to-day activities, sharing the same corporate officers, commingling branding, assuming debts, providing money without consideration, and other indicators of complete control.

12.    Gree USA, Inc. is so wholly controlled by Gree China that Gree USA, Inc., a California company, has represented in sworn testimony in other lawsuits that the company does not have a single employee in the United States, all are based in China. In fact, upon information and belief, Gree USA, Inc. presently has only one nominal "employee," and that "employee" is an employee of Gree China.

13.    Gree Hong Kong is also the alter ego of Gree China, by which it is wholly owned. Gree Hong Kong is controlled by Gree China to the extent it has no separate identity. It is so wholly controlled by Gree China that the Hong Kong company has represented in other litigation that it has no employees in Hong Kong.

14.     Gree USA was a marketing arm and seller of products manufactured by Gree China. In fact, in 2012, for example, Gree USA sold over 1.2 million units of air conditioners and dehumidifiers, with a sale volume of over $150 million.

15.     Based on information and belief, in 2012, the customer service department of MJC began to receive complaints that dehumidifiers manufactured in China and sold by Gree USA were overheating and catching fire.[1]

16.     In 2021, Gree China, Gree USA, and Gree Hong Kong entered into plea agreements in which they all admitted to committing crimes in the United States. As part of their plea agreements, each Gree Defendant to this action admitted to the facts contained in the "Statement of Facts" included within their plea agreements, found at *United States of America v. Gree Electric Appliances, Inc. of Zhuhai et. al.*, 2:21-cr-00498-DSF, Doc. 9, Page ID #:138-154. This Statement of Facts is incorporated herein by reference.

17.     JOHN DOES 1 through 10 are, upon information and belief, business entities of unknown form which sold, marketed, advertised, distributed, designed, and/or manufactured the product at issue in this litigation in concert with Gree U.S.A. or independent of Gree USA, Inc. Pursuant to Wis. Stat. § 807.12, these persons / entities are being identified by a fictitious name.

18.     Upon information and belief, defendant(s) ABC INSURANCE COMPANIES (hereinafter "ABC INSURANCE") is/are insurance corporations licensed to do and doing substantial and not isolated business in Wisconsin; that ABC INSURANCE delivered policies of

---

[1] This information is based on the factual assertions contained in the lawsuit filed in the United States District Court, Central District of California; docket no. CV13-04264 entitled *MJC America Ltd. dba Soleus International Inc. and MJC America Holdings Co., Inc. v. Gree Electric Appliances, Inc. of Zhuhai, Hong Kong Gree Electric Appliances Sales Ltd.* as well as the "Statement of Facts" included in a deferred prosecution agreement entered between Gree Electric Appliances, Inc. of Zhuhai and the United States as a result of a federal criminal prosecution. *United States of America v. Gree Electric Appliances, Inc. of Zhuhai et. al.,* 2:21-cr-00498-DSF, Doc. 9, Page ID #:138 ("Defendants Gree Electric Appliances, Inc. of Zhuhai, Gree USA, Inc., and Hong Kong Gree Electric Appliances Sales Co., Ltd. hereby agree and stipulate that the following information is true and accurate.") (cleaned up)

insurance to the named defendants hereto or to JOHN DOES 1-10 providing liability coverage for claims, including those like the one detailed herein; that by virtue of the terms and conditions of the policies of insurance and the statutes of the State of Wisconsin, ABC INSURANCE is/are directly liable to Plaintiffs; that ABC INSURANCE has/have an interest in the outcome of this action that is adverse to Plaintiffs and is/are, therefore, proper party defendant(s) pursuant to the provisions of Wis. Stat. § 803.04(2); that the identity(ies) of ABC INSURANCE is/are as-of-yet unknown and, therefore, Plaintiffs are identifying ABC INSURANCE by a fictitious name pursuant to the provisions of Wis. Stat. § 807.12.

## JURISDICTION / VENUE

19.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(1) as this action involves a controversy between citizens of different states and countries. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court, $75,000, exclusive of interest and costs.

20.     Jurisdiction is also proper based on 28 U.S.C. §§ 1331 & 1367 as the Plaintiffs bring claims under the Magnuson-Moss Warranty Act. The Court may exercise pendent jurisdiction over the non-federal claims included herein.

21.     Venue in this action is proper in this District Court pursuant to 28 U.S.C § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

22.     On or about September 10, 2025, a fire occurred at the Badger Mine and Museum located in Shullsburg (the "Fire").

23.     At all times relevant, City of Shullsburg owned the Badger Mine and Museum.

24.    The Fire originated at and was caused by a defective and unreasonably dangerous Gree dehumidifier (the "Dehumidifier" or the "Subject Dehumidifier").

25.    On October 15, 2025, a joint scene inspection of the Mine and Museum at which the Fire occurred was conducted. The inspection revealed the Fire originated at the Subject Dehumidifier.

26.    On December 9, 2025, a laboratory examination of the harvested evidence from the Mine and Museum occurred, including an examination of the Subject Dehumidifier. The Defendants sent representatives to attend and participate on their behalf. At the lab examination, the Subject Dehumidifier was revealed to have failed internally, such that it overheated, started on fire, and caused the Fire.

27.    The Subject Dehumidifier was designed, manufactured, sold, and distributed by Gree USA, Inc. ("Gree USA"), Gree Electric Appliances Inc. of Zhuhai ("Gree China"), Hong Kong Gree Electric Appliance Sales, Ltd. ("Gree Hong Kong"), [collectively, Gree China, Gree Hong Kong, and Gree USA are referred to *hereinafter* as "Gree"], and the two MJC Defendants.

28.    The Defendants have a long history of shocking, criminal conduct related to the design, manufacture, sale, and marketing of knowingly defective dehumidifiers.

29.    All three of the Gree Defendants—Gree China, Gree Hong Kong, and Gree USA—admitted to committing felonies in the United States of America, directly related to the cover-up of defects with dehumidifiers designed and made by Gree China.

30.    All of the Gree Defendants—Gree China, Gree Hong Kong, and Gree USA—knew, or at the very minimum, should have known, the Subject Product was unreasonably dangerous and defective when it was sold. They sold it anyway, and some of their criminal conduct came to light later, only when the companies had a falling out with MJC.

31.     All three of the Gree Defendants—Gree China, Gree Hong Kong, and Gree USA— entered into federal criminal plea agreements admitting they committed crimes of moral turpitude.

32.     A partial list of the conduct these Defendants have admitted to perpetuating was included in a Statement of Facts appended to the Defendants' criminal plea agreements and which is available online here: www.justice.gov/d9/press-releases/attachments/2021/10/29/008_-_gree_usa_plea_agreement_filed_0.pdf

33.     The Dehumidifier at issue in this lawsuit has been, upon information and belief, recalled.  It contained a wrap on the cord the reads "Soleus Air powered by Gree" and which is depicted below:



34.     On September 10, 2025, the Subject Dehumidifier failed and caught fire, causing property damage and other damage to City of Shullsburg.

35.     The Fire also caused damage to EMC as a contractual and equitable subrogee of City of Shullsburg.

36.     As a result of the Fire, and pursuant to the terms of an insurance policy, EMC paid and will pay money to and on behalf of City of Shullsburg and is contractually and equitable subrogated to the rights of the City of Shullsburg against the Defendants.

## COUNT I – STRICT PRODUCTS LIABILITY – ALL DEFENDANTS

37.     Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein at length.

38.     The Subject Dehumidifier was defective in design, defective in manufacture, and defective with respect to warnings.

39.     The foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design, and the omission of the alternative design rendered the product not reasonably safe.

40.     The foreseeable risks associated with the design of the Subject Product exceeded the benefits associated with its design.

41.     Moreover, the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings rendered the product not reasonably safe.

42.     In addition, or in the alternative, the Subject Dehumidifier, upon information and belief, departed from its intended design.

43.     The Subject Dehumidifier was not reasonably safe at the time it left the possession and control of Defendant because:

      a.     it was designed and manufactured in such a way as to malfunction and ignite a fire;

b.   it failed to remove humidity in a safe manner as would be expected by the ordinary consumer;

c.   it lacked adequate safety features or safeguards to prevent the Subject Dehumidifier from igniting the Fire;

d.   Defendants failed to properly inspect and test the Subject Dehumidifier to insure against a fire hazard;

e.   Defendants failed to properly inspect and test the Subject Dehumidifier to ensure that it was safe and not unreasonably dangerous when used to reduce humidity in a residential setting;

f.   The Subject Dehumidifier was designed, manufactured, marketed, distributed, and sold for the purpose of reducing humidity in a residential setting, though it had been manufactured and designed with materials, which were inadequate for such a purpose and which presented a fire hazard;

g.   The Subject Dehumidifier was labeled, marketed, distributed, supplied, and sold for the purpose of reducing humidity in a residential setting, though the Recalled Dehumidifiers were unsafe and unreasonably dangerous when used for this intended application.

h.   The Subject Dehumidifier was designed and manufactured without adequate warning to the intended users that the Dehumidifier posed a fire risk when used for the intended purpose of reducing humidity in a residential setting;

10

i. The Subject Dehumidifier was designed and manufactured in such a way as to cause overheating at the control panel within the product that posed a risk of fire when used for the intended purpose of reducing humidity in a residential setting;

j. Upon information and belief, the Subject Dehumidifier utilized plastic that failed basic flammability standards to which it was improperly and/or fraudulently certified to meet;

k. The Subject Dehumidifier was designed with inferior critical components that could not withstand proper or foreseeable uses; which failed over time and allowed the product to overheat and was made, additionally, from inferior quality products inconsistent with foreseeable uses;

l. The Subject Dehumidifier's thermal cutoff that was intended to turn off power to the machine when it achieved an unsafe temperature failed to adequately perform its function, such that the dehumidifier overheated and started on fire;

m. The Subject Dehumidifier was designed in a manner that allows the device's compressor to obtain an unreasonably high temperature that can cause a fire and did so in this instance;

n. The Subject Dehumidifier failed to include warnings that it could overheat and cause a fire sufficient to alert City of Shullsburg that, even if used in a reasonably foreseeable manner, the product could fail and cause a catastrophic fire;

11

o.   The Subject Dehumidifier was otherwise defective and unreasonably dangerous in its design, manufacture, assembly, and with respect to its warnings.

44.    The aforementioned conditions rendered the Subject Dehumidifier a defective and unreasonably dangerous product to persons or property.

45.    The defective conditions with the Subject Dehumidifier existed at the time the product left the control of the manufacturer.

46.    The Subject Dehumidifier reached City of Shullsburg without substantial change in the condition in which it was sold.

47.    As a direct and proximate result of one or more of the aforementioned defective and unreasonably dangerous conditions or other such conditions, the Subject Dehumidifier suddenly and calamitously ignited and burned in the Badger Mine and Museum, causing significant smoke and fire-related property damage, loss of use of the property, damages to artifacts with inherent, historical, and sentimental value, and other damage to City of Shullsburg and EMC.

48.    As a result of the Fire, and pursuant to the terms of an insurance policy, EMC paid and will pay money to and on behalf of City of Shullsburg and is contractually and equitable subrogated to the rights of the City of Shullsburg against the Defendants.

49.    At the time they sold it, Defendants had actual knowledge that the dehumidifier they sold and which was possessed by City of Shullsburg was defective in design, manufacture, and warning, and that a loss, such as the fire in this action, had a substantial likelihood of occurring.

50.    Gree USA, Inc., Gree Zhuhai, HK Gree, MJC, and Soleus International, Inc. each manufactured, designed, sold, imported, marketed and distributed the product at issue, and they knew the product to be defective at the time the product left their respective possessions, but

nonetheless sold the product and participated in a cover-up to prevent the U.S. government, business partners, and consumers, including the City of Shullsburg, from learning of the defects and associated dangers of the Subject Dehumidifier.

51.    Even after the Defendants finally recalled the Subject Product, they did the bare minimum to alert consumers and to try to take knowingly defective, dangerous products out of use. Upon information and belief, The Defendants actively did so to try to save money, again putting profits over safety, just as each did when they committed crimes in covering up their products' defects.

52.    The actions and inactions of all Gree Defendants and MJC Defendants were conducted with malice, fraud, oppression, and intentional disregard of the rights of the City of Shullsburg and others.

WHEREFORE, Plaintiffs City of Shullsburg and EMC, as subrogee and assignee of City of Shullsburg, request that judgment be entered in their favor and against the Defendants—jointly, severally, and/or in the alternative—on Count I, in an amount to be determined by a jury, including full restitution, together with costs, delay damages, interest, and all other damages allowed by law, and any further relief the Court deems equitable and just. City of Shullsburg further seeks punitive damages for the Defendants' malicious conduct and conduct in intentional disregard of the Plaintiffs' rights.

### COUNT II – NEGLIGENCE – ALL DEFENDANTS

53.    Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein at length.

54.    The Defendants owed a duty to City of Shullsburg and the general public, to source, test, inspect, market, distribute and sell dehumidifiers with reasonable care, and Defendants had a duty to protect the City of Shullsburg from foreseeable and unreasonable risk of harm.

55.    The Defendants breached this duty by, among other things, negligently designing, manufacturing, sourcing, testing, inspecting, distributing, and selling defective dehumidifiers, including the Subject Dehumidifier, and by failing to act to meet their obligations under the Consumer Product Safety Act once they knew their products were defective, but instead covered up the problems and continued to sell knowingly defective products.

56.    Defendants had a duty to disclose to City of Shullsburg and other consumers the serious safety risks created by their dehumidifiers, and a duty to disclose the defective nature of their dehumidifiers. Defendants breached this duty by selling defective products without providing sufficient warning as to the dangers associated with the products, including the Subject Dehumidifier.

57.    Defendants had a further duty not to put knowingly defective, or know-ably defective, dehumidifiers on the market, including the Subject Dehumidifier, and a continued duty to recall unsafe dehumidifiers from customers in a timely manner, as well as a duty to replace or otherwise remove unsafe dehumidifiers from the market. Defendants breached this duty by selling know-ably defective products, including the Subject Dehumidifier, by failing to report defects timely to the Consumer Product Safety Commission, and by failing to properly undertake a recall effort that would lead to succuss.

58.    Defendants had a duty to source materials and parts with reasonably care. They failed to exercise reasonable care with respect to the sourcing, testing, inspection, marketing, distribution, manufacture, design, importation, and sale of dehumidifiers.

59.     Defendants each had a duty of ordinary care not to make or sell defective, dangerous products. The Defendants breached this duty by selling millions of defective, dangerous dehumidifiers that have caused 1000s of fires at American homes and businesses, including the Fire made the basis of this lawsuit.

60.     As a direct and proximate result of the negligent acts and omission set forth above, consumers, including City of Shullsburg, purchased defective dehumidifiers without the knowledge of these defects or their serious safety risks.

61.     As a direct and proximate result of each of the Defendants' negligence, City of Shullsburg suffered losses and damages including destruction of property, debris removal, clean up/board up, emergency expenses, inconvenience, hardship, and other incidental costs associated with recovering from the fire, among other damages.

62.     As a direct and proximate result of the Defendants' negligence, Plaintiff EMC, sustained damages as a bona fide subrogee of City of Shullsburg.

WHEREFORE, Plaintiffs City of Shullsburg and EMC, as subrogee and assignee of City of Shullsburg, request that judgment be entered in their favor and against the Defendants—jointly, severally, and/or in the alternative—on Count II, in an amount to be determined by a jury, including full restitution, together with costs, delay damages, interest, and all other damages allowed by law, and any further relief deemed equitable and just. City of Shullsburg further seeks punitive damages for the Defendants' malicious conduct and conduct in intentional disregard of the Plaintiffs' rights.

### COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ALL DEFENDANTS)

63.     Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein at length

64.    The Subject Dehumidifier was subject to an implied warranty of merchantability under Wisconsin Statute §402.314, which warranty was not excluded or modified in compliance with the law nor could be.

65.    The Subject Dehumidifier did not comply with the warranty of merchantability because it was unfit for the ordinary purpose for which dehumidifiers were used, as demonstrated by the fact that the Subject Dehumidifier failed and caused the Fire as described in full above. Defendants' breaches of implied warranty were a proximate cause of the Plaintiffs' harm and resulting damages. Defendants are liable to the Plaintiff for breach of the implied warranty of merchantability under Wisconsin statutory and common law and other applicable statutory law.

66.    As a result of Defendants' breach of implied warranty, City of Shullsburg suffered property damage, lost income, inconvenience damages, damage to historical items and items of sentimental value, and other damage.

67.    Defendants have been on notice of the claims against them for months.

68.    All conditions precedent to the filing of this cause of action have been met.

69.    As a result of the Defendants' breach of implied warranty, and pursuant to the terms of the relevant insurance policy, EMC has paid, and will pay in the future, money to and on behalf of City of Shullsburg for damage caused by the Fire. EMC is equitably and contractually subrogated to the rights of City of Shullsburg and stands in its shoes to the extent of any damages it pays.

WHEREFORE, Plaintiffs City of Shullsburg and EMC, as subrogee and assignee of City of Shullsburg, request that judgment be entered in their favor and against the Defendants—jointly, severally, and/or in the alternative—on Count III, in an amount to be determined by a jury, including full restitution, together with costs, delay damages, interest, and all other damages

16

allowed by law, and any further relief the Court deems equitable and just. City of Shullsburg further seeks punitive damages for the Defendants' malicious conduct and conduct in intentional disregard of the Plaintiffs' rights.

### COUNT IV – VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S. CODE §2301 ET. SEQ
### (ALL DEFENDANTS)

70. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs as though fully set forth herein at length.

71. Defendants' dehumidifiers, including the Subject Dehumidifier, are "consumer products" within the meaning of 15 U.S.C § 2301.

72. The City of Shullsburg, is a "consumer" within the meaning of 15 U.S.C. § 2301. EMC is subrogated to the rights of City of Shullsburg and is a bona fide subrogee of the City in contract and equity.

73. The Defendants made written and implied warranties regarding their dehumidifiers, including the Subject Dehumidifier, to consumers, including the Insured, within the meaning of 15 U.S.C. § 2301.

74. Gree Zhuhai, Gree USA, Inc., Gree Hong Kong, and the MJC entities each violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et. seq*. by failing to comply with the implied warranties they made to Plaintiffs and to the general public.

75. City of Shullsburg sustained property damage, loss of use damage, and other damages as a result of Defendants' violations of their written and/or implied warranties.

76. Pursuant to the terms of the applicable insurance policy, EMC has and will pay money to and on behalf of City of Shullsburg for damage caused by the Fire and Defendants' warranty violations.

WHEREFORE, Plaintiffs City of Shullsburg and EMC, as subrogee and assignee of City of Shullsburg, request that judgment be entered in their favor and against the Defendants—jointly, severally, and/or in the alternative—on Count IV, in an amount to be determined by a jury, including full restitution, together with costs, delay damages, attorneys' fees, and all other damages allowed by law, and any further relief the Court deems equitable and just. City of Shullsburg further seeks punitive damages for the Defendants' malicious conduct and conduct in intentional disregard of the Plaintiffs' rights.

## JURY DEMAND

The Plaintiffs request and demand a jury trial.

Dated this 12th day of May, 2026.

s/ Richard Schuster
Richard A. Schuster
State Bar No. 1055486
MATTHIESEN, WICKERT, & LEHRER, SC
1111 E. Sumner St.
PO Box 270670
Hartford, WI 53027
rschuster@mwl-law.com
*Representing Plaintiffs*